# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**UNITED STATES OF AMERICA,**

        **Respondent,**

        **v.**

**ARISTOTLE R. MATSA, et al.,**

        **Petitioner.**

**CASE NO. 2:15-CV-700**
**CRIM. NO. 2:09-CR-297**
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Chelsey M. Vascura**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this *Motion to Vacate under 28 U.S.C. § 2255*. (ECF No. 424.) This matter is before the Court on the § 2255 motion, Respondent's *Response in Opposition*, Petitioner's *Reply*, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that the *Motion to Vacate under 28 U.S.C. § 2255* (ECF No. 424) be **DENIED** and that this action be **DISMISSED**. In addition, Petitioner's *Motion to Cause the Electronic Inclusion of All Documents Previously filed in This Matter by The Petitioner* (ECF No. 428) and *Motion to Strike Response to Motion* (ECF No. 431) are **DENIED.** Respondent's motion to hold answer in abeyance (*see* ECF No. 429) is **DENIED** as moot.

### Motion to Cause the Electronic Inclusion of All Documents Previously Filed

In conjunction with the filing of the *Motion to Vacate under 28 U.S.C. § 2255*, Petitioner has filed six "Appendix Exhibits" with the Clerk. These exhibits total thousands of pages in length, in addition to the 274 pages included in the § 2255 petition. Due to the voluminous nature of the filing, the Clerk permitted the manual filing of Petitioner's exhibits, and copies of these documents are housed in the Clerk's Office. Petitioner requests that the Clerk be directed to scan all of his attached "Appendix Exhibits" so that they may be viewed via the Court's

CM/ECF electronic filing system. Petitioner additionally has filed a *Motion to Strike* Respondent's response in opposition (ECF No. 431) to Petitioner's motion for electronic inclusion of his exhibits as untimely pursuant to Rule 7.2(a)(2) of the Local Rules of the Southern District of Ohio, which provides that a memorandum in opposition must be filed within twenty-one days of the date of service of the motion, and for failure to provide Petitioner with a copy of the filing.

Petitioner's motions are **DENIED**. The docket indicates that Respondent served Petitioner with a copy of the response in opposition by mail at Petitioner's current address at the Ashland Federal Correctional Institution. Further, although Respondent waited more than the required twenty-one days to file the response in opposition, nothing contained therein alters or otherwise affects this Court's ruling on the matter. *See, e.g., Younker v. Ohio State Univ. Med. Ctr.*, No. 2:11-cv-00749, 2013 WL 3222902, at *2 (S.D. Ohio June 25, 2013) (declining to strike sur-reply for noncompliance with local rules where the sur-reply did not cause prejudice). The Court will not require the Clerk to scan the voluminous exhibits Petitioner has attached in support of his § 2255 motion for electronic viewing on the CM/ECF docket. The exhibits have been manually filed and are available and accessible for viewing in the Clerk's Office.

Additionally, the Local Rules of this Court provide that the memorandum in support of the *Petition* shall include a "brief statements of the grounds, with a citation of authorities relied upon." S.D. Ohio Civ. R. 7.2(a)(1). Petitioner has made no attempt to comply with this rule. The Local Rules expressly indicate the Court prefers that a memoranda in support not to exceed twenty pages in length. In all cases in which the memoranda exceeds twenty pages, a table of contents and "succinct, clear, and accurate summary, not to exceed five pages, indicating the main sections of the memorandum and the principal arguments and citations to primary authority

made in each section, as well as the pages on which each section and any sub-sections may be found" shall be included. S.D. Ohio Civ. R. 7.2(a)(3). Petitioner has vastly exceeded this Court's twenty-page limitation on memoranda in support and failed to comply with the Court's Local Rules. He has not provided a table of contents or any clear and succinct summary of his arguments for this Court's review. His memoranda and supportive documentation are therefore subject to dismissal on this ground alone. *Id*.; *see Martinez v. United States*, 865 F.3d 842, 844 (6th Cir. 2017)(affirming the District Court's dismissal of the § 2255 motion based on the petitioner's failure to comply with page limitations required under local rules).

Consequently, Petitioner's *Motion to Cause the Electronic Inclusion of All Documents Previously filed in This Matter by The Petitioner* (ECF No. 428) and *Motion to Strike Response to Motion* (ECF No. 431) are **DENIED.**

## Facts and Procedural History

The United States Court of Appeals for the Sixth Circuit summarized the facts as follows:

> Matsa was a licensed real-estate broker and lawyer in Ohio. He routinely reported losses or minimal income from his businesses, such that from 1985 to 2006 he paid a total of $107 in federal income tax. His legal troubles began when Chrissoula Matsa, his wife at the time with whom he was undergoing divorce proceedings, tipped off law enforcement to his shady dealings. A subsequent investigation by the federal grand jury revealed a number of dubious practices, including the use of phony trusts to mask personal assets, the failure to report rental income, and the transfer of property (though not actual control) to friends and relatives. During the investigation, Matsa failed to comply fully with the government's subpoena of his records. Based on this conduct, the grand jury indicted Matsa for one count of corrupt interference with administration of the internal revenue laws, 26 U.S.C. § 7212(a); fifteen counts of assisting preparation of false tax returns, 26 U.S.C. § 7206(2); one count of failing to report a foreign bank account, 31 U.S.C. §§ 5314, 5322(b); one count of conspiracy to obstruct justice, 18 U.S.C. § 371; two counts of witness tampering, 18 U.S.C. § 1512(b); one count of making a false statement, 18 U.S.C. § 1001; and one count of obstruction of

justice, 18 U.S.C. § 1503(a). The grand jury also indicted Matsa's mother for conspiracy to obstruct justice and tried them together. A jury found Matsa guilty on all counts after a five-week trial, and the court sentenced him to a term of 85 months' imprisonment.

*United States v. Matsa*, 540 F. App'x 520, 522 (6th Cir. 2013) *cert. denied*, __ U.S. __, 134 S. Ct. 1502 (2014). Petitioner raised the following claims on direct appeal:

> 1) the district court's decision to remove his counsel of choice violated his Sixth Amendment rights; 2) the prosecution engaged in systematic misconduct that deprived him of due process; and 3) the authorities obtained an invalid search warrant by failing to inform the magistrate about their confidential informant.

*Id*. On October 25, 2013, the Sixth Circuit affirmed the judgment of this Court. On March 3, 2014, the United States Supreme Court denied the petition for a writ of *certiorari*. (ECF No. 418.)

On February 24, 2015, Petitioner filed this *Motion to Vacate under 28 U.S.C. § 2255.* (ECF No. 424.) He asserts that he was denied a fair trial based on prosecutorial misconduct; that he should receive a two point reduction in his recommended sentence under the United States Sentencing Guidelines pursuant to Amendment 782, effective November 1, 2014; and that he is actually innocent of the charges against him. *Petition* (ECF No. 424, PageID# 88748.) It is the position of the Respondent that Petitioner's claims are procedurally defaulted and without merit.

**Standard of Review**

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or

when the trial court lacked jurisdiction, when the sentence was in excess of the maximum

sentence allowed by law, or when the judgment or conviction is "otherwise subject to collateral

attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991). In the absence of

constitutional error, the question is "whether the claimed error was a 'fundamental defect which

inherently results in a complete miscarriage of justice,'" *Davis v. United States*, 417 U.S. 333,

346 (1974)(quoting *Hill v. United States,* 368 U.S. 424, 428–429 (1962)); *see also Griffin v.*

*United States*, 330 F.3d 733, 736 (6th Cir. 2006). However, "'[a] § 2255 motion may not be

used to relitigate an issue that was raised on appeal absent highly exceptional circumstances.'"

*DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)(quoting *United States v. Brown*, No.

94-5917, 1995 WL 465802, 62 F.3d 1418, at *1 (6th Cir. Aug. 4, 1995), *cert. denied*, 516 U.S.

942 (1995)). Further, non-constitutional claims not raised at trial or on direct appeal are waived

on collateral review except where the errors amount to something akin to a denial of due process.

Accordingly, claims that could have been raised on direct appeal, but were not, will not be

entertained on a motion to vacate under § 2255 unless the petitioner shows: (1) cause and actual

prejudice sufficient to excuse his failure to raise the claims previously; or (2) that he is "actually

innocent" of the crime. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013)(citing *Bousley v.*

*United States,* 523 U.S. 614, 622 (1998))(internal citations omitted).

## Sentence Reduction

Petitioner seeks a two point reduction in his recommended sentence under the advisory

United States Sentencing Guidelines pursuant to Amendment 782, which revised the guidelines

applicable to drug trafficking offenses by changing how the base offense levels in the Drug

Quantity Table in U.S.S.G. § 2D1.1 (unlawful manufacturing, importing, exporting, trafficking,

including possession with intent to commit these offenses; attempt or conspiracy) incorporate the

statutory mandatory minimum penalties for such offenses.  *See Supplement to Appendix C,*

Amendment 782; *Braden v. United States*, 643 F. App'x 531, 533 (6th Cir. Mar. 10, 2016).   The

amendment became effective on November 1, 2014, after the Court's November 2, 2012,

imposition of sentence in this case.  (ECF No. 390.)

Further, federal courts have consistently held "that ordinary questions of guideline

interpretation falling short of the 'miscarriage of justice' standard do not present a proper section

2255 claim."  *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011)(citing, *inter alia,*

*Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995)).

> When an amendment to the Sentencing Guidelines clarifies a
> vague guideline and results in a lower guideline range, a prisoner
> can move the sentencing court under 18 U.S.C. § 3582(c)(2) for a
> reduction in the sentence if the amendment is listed in U.S.S.G. §
> 1B1.10(c).

*Rivera v. Warden, FCI, Elkton*, 27 F. App'x 511, 515 (6th Cir. 2001).

However, "[a] reduction in the defendant's term of imprisonment . . . is not authorized

under 18 U.S.C. § 3582(c)(2) if an amendment . . . does not have the effect of lowering the

defendant's applicable guideline range."  *States v. Williams*, No. 2:07-cr-011, 2015 WL 4430996,

at *1 (E.D. Tenn. July 20, 2015)(citing U.S. Sentencing Guidelines Manual § 1B1.10(a)(2)(B)

(2014)). Such are the circumstances here. Petitioner's sentence was not based on reference to the

Drug Quantity Table, but on § 2T1.1, which addresses offenses involving taxation.  *Pre Sentence*

*Investigation Report*, ¶ 59.  Therefore, Amendment 782 does not provide Petitioner the relief he

seeks.  *See Callins v. United States*, 105 F. Supp. 3d 732, 737 (E.D. Mich. April 7, 2015)(citing

*United States v. Thompson*, 714 F.3d 946, 950 (6th Cir.2013)).

Petitioner asserts that limiting application of Amendment 782 to drug offenders (and not to his convictions in this case) violates the Equal Protection Clause. (*See* ECF No. 424, PageID# 88761.) This claim also fails.

> The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an Equal Protection claim, Petitioner must show intentional discrimination against him based on his membership in a suspect class. *Washington v. Davis*, 426 U.S. 229, 239 (1976); *Booher v. U. S. Postal Serv*. 843 F.2d 943, 944 (6th Cir. 1988) (a plaintiff must demonstrate that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim."). Petitioner has not alleged, much less proven, that he was victimized based on his membership in a suspect class.

*Russell v. United States*, Nos. 4:09-cr-12-HSM-SKL; 4:13-cv-58-HSM, 2016 WL 3951144, at *5 (E.D. Tenn. July 19, 2016)(the Court's failure to apply Fair Sentencing Act to Petitioner's guideline sentence cannot form the basis of an Equal Protection claim). "A law that lacks a 'racially discriminatory purpose' does not become unconstitutional 'solely because it has a racially disproportionate impact.'" *United States v. Blewett*, 746 F.3d 647, 658 (6th Cir. 2013) (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)), *cert. denied*, __ U.S. __, 134 S. Ct. 1779 (2014). Thus, Petitioner's claim that he is entitled to a sentence reduction based on application of Amendment 782 does not provide him a basis for relief.

### Prosecutorial Misconduct

Petitioner asserts that he was denied a fair trial due to pervasive prosecutorial misconduct. Petitioner submits that the prosecutor wrongfully pursued the charges against him despite knowledge of his actual innocence; knowingly presented false evidence; barred Petitioner from sidebar discussions during trial and at an in-chambers conference; altered the content of recorded conversations that were admitted into evidence; prevented the development of the

record in order to suppress evidence of prosecutorial misconduct; engaged in improper vouching, made improper comments on the evidence, and made inappropriate gestures and noises during trial; conducted inappropriate meetings with his ex-wife and intentionally destroyed or withheld exculpatory evidence; vindictively filed additional charges after Petitioner declined to enter a guilty plea; improperly threatened witnesses, defense counsel, and defendants; lied; improperly communicated with the jury; and falsely contrived the charges against him "based on an ill manufactured vendetta" arising out of Petitioner's divorce.  (PageID# 88774.)  According to Petitioner, he could not have earlier raised these issues, because he lacked access to the trial transcripts.  (PageID# 88815).

However, the United States Court of Appeals for the Sixth Circuit has already considered and rejected many of the allegations Petitioner now raises:

> Matsa claims a potpourri of prosecutorial bad acts that he believes require reversal of his conviction. The disputed conduct occurred both prior to and during trial. Additionally, Matsa claims the cumulative effect of the prosecution's conduct warrants reversal.

> A. Pretrial Conduct

> Matsa identifies four categories of pretrial prosecutorial misbehavior: 1) intimidation of witnesses before the grand jury; 2) obstruction of Matsa's pre-deposition access to a witness who was the named beneficiary of one of Matsa's trusts; 3) threats toward defense counsel; and 4) violation of attorney-client privilege.FN2 Matsa raised these arguments in various motions to dismiss the indictment, which the district court denied. A federal court's authority to dismiss an indictment stems from its supervisory powers. *See United States v. Williams*, 504 U.S. 36, 46, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). Refusal to dismiss an indictment is reviewed for abuse of discretion. *United States v. Lee*, 359 F.3d 412, 417 (6th Cir. 2004).FN3

> 1. Witness intimidation. Matsa claims the prosecutor acted improperly by accusing several witnesses of lying in their testimony to the grand jury. For example, in questioning one witness before the grand jury, the prosecutor said, "Now you lied

to us within ten minutes today." Matsa also alleges that, during the grand jury proceedings, the prosecutor told another witness in the hallway that he planned to "throw swords" and that the witness might not wish to fall on a sword for Matsa.

Though Matsa claims these actions deprived him of due process by forcing witnesses to conform their testimony to the prosecutor's will, the facts alleged do not state a due process violation. An individual has no constitutional right to present witnesses at a grand jury proceeding, *see Williams*, 504 U.S. at 51–52, 112 S.Ct. 1735, and Matsa did not renew his objection at trial. Rather, Matsa's claim must be analyzed under the standard established in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). Under this standard, an indictment should be dismissed for prosecutorial misconduct before the grand jury only " 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256, 108 S.Ct. 2369 (quoting *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)).

Assuming that the prosecutor's comments were indeed improper, the district court did not abuse its discretion by finding a lack of prejudice. As the parties agree, the comments at issue were made before a predecessor grand jury—not the grand jury that ultimately returned the indictment. Therefore, any violation did not "substantially influence[ ] the grand jury to indict." *Bank of Nova Scotia*, 487 U.S. at 256, 108 S.Ct. 2369.FN4

2. Obstruction of access to a witness. Matsa alleges that the government denied him a fair trial by blocking access to a witness prior to the witness's deposition. However, Matsa does not adequately explain the circumstances of the alleged obstruction, and the government disputes it altogether. Even if the government in fact blocked access to the witness, Matsa still was able to question the witness at the deposition itself. Matsa does not explain how a defendant is denied a fair trial when he actually had an opportunity to question a witness. The district court did not abuse its discretion by refusing to dismiss the indictment on this ground.

3. Threats toward defense counsel. Matsa complains of several aggressive statements the prosecutor made to his attorneys prior to trial. For example, the prosecutor threatened to report Tyack to the Ohio Bar Association and told another attorney that "your client better watch out and you better watch out too." The attorneys

testified at a motion hearing that these statements were "chilling" and caused them to proceed with "great caution" in discovery. The district court found that the comments were improper but did not prejudice Matsa such as to require dismissal of the indictment. This was not an abuse of discretion. Matsa points to case law condemning personal attacks on defense counsel during trial, but the statements in question did not occur before the jury at trial. Matsa received—and continues to receive—vigorous representation.

4. Attorney-client privilege. A search of Matsa's home and office yielded some 300,000 documents and recordings, many of which involved Matsa in his capacity as an attorney. Matsa moved to suppress privileged material discovered in the search and to dismiss the indictment because privileged material was used to obtain it. The district court held that, even if it was otherwise privileged, the material in question fell within the crime-fraud exception to the privilege because it contained conversations in which Matsa attempted to obstruct the investigation and tamper with witnesses. *See United States v. Zolin*, 491 U.S. 554, 562–63, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (discussing crime-fraud exception). The court therefore refused to dismiss the indictment. On appeal, Matsa simply repeats his claim that the government used privileged material and specifies no legal or factual error in the district court's holding. Accordingly, refusal to dismiss the indictment or bar use of the records in question was not an abuse of discretion.

B. Conduct at Trial

Matsa claims two categories of misconduct at trial: 1) that the prosecutor improperly expressed his personal beliefs through comments and facial expressions and 2) that the prosecutor's questioning of witness Ross Gillespie improperly solicited Gillespie's commentary on Matsa's truthfulness. We review this claim *de novo*. *United States v. Deitz*, 577 F.3d 672, 694 (6th Cir. 2009). In determining whether reversal for prosecutorial misconduct is warranted, the key question is whether the prosecutor acted both improperly and flagrantly so, which in turn requires assessing the misleading nature, extent, and deliberateness of the conduct alongside the overall strength of the government's case. *Id.* Flagrant misconduct requires reversal, but non-flagrant violations do not unless the government's case was weak and the court failed to cure the violation. *Id.*

1. Commentary and facial expressions. Matsa points to two specific episodes of improper commentary. In the first, the prosecutor grunted, snickered, and shook his head while questioning a witness. In a sidebar conference, the trial judge admonished the prosecutor to be careful. Matsa does not claim that this sort of conduct pervaded the proceedings, and isolated incidents during a five-week trial do not require reversal. *United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir. 1996).

The second episode regards the prosecutor's cross-examination of Matsa. During questioning, the prosecutor suggested on multiple occasions that Matsa was "blaming" others for his conduct. Viewed as a whole, the prosecutor's questioning, while charged, was not flagrantly improper. The suggestion that Matsa was blaming others was not geared to mislead but rather to attack Matsa's direct testimony, a proper function of cross-examination. Matsa had an opportunity to respond—and did respond—to the notion that he was shifting responsibility. Moreover, the judge provided a cure by striking one comment from the record. Argumentative questioning of this nature is not the sort of commentary that has required reversal in the past. *Cf. United States v. Carter,* 236 F.3d 777 (6th Cir. 2001) (requiring new trial where prosecutor's closing argument mischaracterized evidence and accused defense counsel of lying). The prosecutor's style of cross-examination may not have been ideal, but it did not render the trial so unfair as to create reversible error.

2. Questioning of Ross Gillespie. Gillespie was a former Matsa employee who testified for the government. During direct examination, the prosecutor played portions of tapes in which Matsa discussed his firm's handling of a particular trust and Gillespie's role as an employee at the firm. The prosecutor then elicited Gillespie's testimony that statements in the recordings were not truthful. Matsa argues that this questioning was improper because "credibility determinations are meant for the jury, not witnesses." *United States v. Dickens*, 438 F. App'x 364, 370 (6th Cir.2011). There is indeed a body of case law establishing that one witness should not be asked directly whether another witness is lying—particularly where a prosecutor seeks to pit a testifying defendant against a law enforcement officer's inculpatory testimony. *See id.* at 369–70. However, the questioning at issue here did not approach the line drawn by that case law. The prosecutor did not ask Gillespie to comment on the veracity of Matsa's trial testimony. Rather, he questioned Gillespie about practices of Matsa's firm based on Gillespie's personal knowledge. If Gillespie's testimony punctured Matsa's credibility, that is

because the charges put Matsa's honesty at issue. There was nothing improper about this line of questioning.

C.  Cumulative Effect

Matsa claims the cumulative effect of the behavior discussed above requires reversal. He raised this claim in a motion for a new trial, which the district court rejected. When a defendant raises a claim of cumulative prosecutorial misconduct, a new trial will not be granted unless the defendant can show "that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). Matsa cannot satisfy this standard. Matsa has identified some possible isolated improprieties in the prosecutor's conduct at trial, but this conduct was not so pervasive as to require a new trial. Moreover, Matsa's argument that the prosecutor's pretrial conduct rendered the entire five-week trial unfair is unconvincing. The district court did not err by refusing to grant a new trial.

\*\*\*

FN2:  Matsa also argued before the district court that the prosecutor acted improperly by threatening to indict his mother if he did not plead guilty—a threat that came to fruition. Though Matsa mentions this incident in the facts section of his brief, he does not develop any sort of argument about why it requires reversal of his conviction. We therefore do not consider whether the prosecutor acted improperly by threatening to indict Matsa's mother. *See Treesh v. Bagley*, 612 F.3d 424, 434 (6th Cir. 2010).

FN3:  Matsa argues that the district court should have assessed pretrial misconduct by using the test articulated in *United States v. Deitz*, 577 F.3d 672 (6th Cir. 2009). However, *Deitz* applies to claims of misconduct at trial. When alleged misconduct occurs prior to trial, the question of whether to dismiss the indictment is left to the district court's discretion.

FN4:  Though it has no bearing on whether the district court's pretrial ruling was correct, several of the witnesses in question testified for the government at Matsa's trial and admitted they lied to the grand jury. Matsa suggests that the witnesses' change of heart might have stemmed from coercion in the grand jury proceedings. However, Matsa did not claim below that the government deprived him of trial witnesses, and the issue on appeal is limited to whether the district court erred by refusing to

> dismiss the indictment in its pretrial ruling. Matsa did submit a
> motion for new trial in which he incorporated his pretrial
> misconduct motion and claimed cumulative prejudicial effect. This
> argument is addressed in Part III.C below.

*United States v. Matsa*, 540 F. App'x at 524-28. This Court will not address these issues again.

*See Jones v. United States*, 178 F.3d 790, 796 (6th Cir.) ("a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law"), *cert. denied*, 528 U.S. 933 (1999).

Petitioner argued in his motion for a new trial that the government had improperly submitted potentially prejudicial recordings to the jury that had not been played or admitted as evidence during the course of trial and introduced an inaccurate transcript of a recording of his conversation with Anthony Solazzo. Petitioner did not raise these issues on direct appeal, and he has therefore waived such claims for review in these proceedings. Moreover, Petitioner has failed to establish cause and prejudice for this procedural default. For the reasons already addressed in this Court's *Opinion and Order* (ECF No. 304) denying Petitioner's motion for a new trial, the claim lacks merit.

> At trial, Matsa claimed that the transcript [of the recorded
> conversations between Matsa and Solazzo showing efforts by
> Matsa to mislead and influence Solazzo to give false testimony to
> the grand jury] was an inaccurate interpretation of the conversation
> and that his transcript of the same recording conducted by a
> certified reporter was different and did not indicate any
> wrongdoing. However, additional evidence was also introduced to
> support the jury's verdict. . . . The jury was shown a video of the
> kitchen remodel work done at Matsa's farmhouse, recorded by
> Matsa himself, which indicated that the granite countertops were
> completed by May 1999, well before the tombstone was completed
> and before any payments were received by Solazzo from the Shaw
> Family Trust account checks Matsa provided him. (Gov. Exs. 43-
> 5, 184-1.) This evidence was further corroborated by Ross
> Gillespie, who testified that he helped Matsa demolish the kitchen
> in 1998 or 1999 before the remodel work shown in the video.
> Moreover, a file seized from Matsa's law office showed that there

were no separate payments which cleared Matsa's personal or
business accounts for any work performed by Solazzo. The only
records of cleared checks received by Solazzo were from the Shaw
Family Trust. (Gov. Ex. 184-1.)

(ECF No. 304, PageID# 15481-82.)

Petitioner's allegation that the prosecutor wrongly pursued false charges against him

based on a vendetta, altered the content of recorded conversations, lied to the District Judge, and

improperly communicated with the jury, knowingly presented false evidence, and pursued

charges despite knowledge of Petitioner's innocence, are entirely without support and likewise

fail to provide a basis for relief.

A petitioner [] bears the burden of articulating sufficient facts to
state a viable claim for relief under § 2255. Vague and conclusory
claims which are not substantiated by allegations of specific facts
with some probability of verity are not enough to warrant relief. A
§ 2255 motion may be dismissed if it only makes conclusory
statements without substantiating allegations of specific facts and
fails to state a claim cognizable under § 2255. *Green v. Wingo,* 454
F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d
733, 735 (6th Cir. 1961).

*United States v. Noble*, No. 1:14-cr-135, 2017 WL 626130, at *3 (N.D. Ohio Feb. 15, 2017).

As previously discussed, evidence indicated that "Matsa—a licensed attorney, real estate

broker, architect, and minister in the state of Ohio—had created a complex web of shell

corporations, churches, and limited liability corporations, as well as trusts with a foreign

beneficiary, in order to funnel and receive the majority of his earnings tax-free, while also

engaging in conduct intending to obstruct the criminal investigation." *Opinion and Order* (ECF

No. 304, PageID# 15475.) The record does not support Petitioner's assertion that the prosecutor

falsely pursued charges against him.

Petitioner maintains that the government improperly filed a *Superseding Indictment* with

additional charges after Petitioner declined to enter a guilty plea. However,

14

> in order to show vindictive prosecution there must be (1) exercise
> of a protected right; (2) a prosecutorial stake in the exercise of that
> right; (3) unreasonableness of the prosecutor's conduct; (4) the
> intent to punish the defendant for exercise of the protected right.
> *See Nat'l Eng'g & Contracting Co. v. Herman*, 181 F.3d 715, 722
> (6th Cir. 1999).

*United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001), *cert. denied*, 535 U.S.

991 (2002).

> [P]rosecutorial vindictiveness can potentially be found in the pre-
> trial addition of charges following pre-trial assertions of protected
> rights. [*United States v. Andrews,*] *633* F.2d at 454. However, if
> the charges are brought simply as the result of failure of the plea
> bargaining process, they are not vindictive. *Id.* at 456 (following
> *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54
> L.Ed.2d 604 (1978) (finding not vindictive a superseding
> indictment bringing additional charges, filed after a failure of plea
> bargaining)).

*Suarez*, 263 F.3d at 479.  The filing of the *Superseding Indictment*, therefore, fails to provide a

basis for relief.

Petitioner complains that he was denied the right to be present at side bar conferences and

at an in-chambers conference.  (ECF No. 424, PageID# 88832.)  "The constitutional right to

presence is rooted in both the Confrontation Clause and the Due Process Clause of the United

States Constitution."  *Frazier v. Bobby*, No. 3:09-cv-1208, 2011 WL 5086443, at *53 (N.D. Ohio

Oct. 25, 2011)(citing *United States v. Gagnon*, 470 U.S. 522, 526 (1985)).  A defendant has a

right to be present only to the extent that his presence is substantially related to his opportunity to

defend against the charge and he cannot receive a fair and just hearing if he is absent.  *Gagnon*,

470 U.S. at 526 (citing *Snyder v. Massachusetts*, 291 U.S. 97, 105-106 1934); *Faretta v.

California*, 422 U.S. 806, 819 n. 15 (1975)).  A criminal defendant generally has no personal

right to be present at an in-chambers or side bar conference addressing questions of law, and no

constitutional violation occurs where the petitioner "could have done nothing had [he] been at the conference, nor would [he] have gained anything by attending." *Gagnon*, 470 U.S. at 527.

Petitioner does not indicate which sidebar conferences he is referring to or explain how his exclusion from any conferences caused him prejudice. *See United States v. Taylor*, 489 F. App'x 34, 44 (6th Cir.)(where the petitioner fails to explain how his presence at unspecified pretrial hearings, sidebar conferences, or chambers conferences would have contributed to the fairness of the proceeding, he fails to establish a violation of due process from his exclusion from those proceedings) (citing *Kentucky v. Stincer*, 482 U.S. 730, 747 (1987)), *cert. denied*, 568 U.S. 1017 (2012). Moreover, Petitioner does not allege that his attorney was not present at all such proceedings in order to represent Petitioner's interests. *See id.* Therefore, Petitioner has failed to establish any due process violation. Petitioner alleges that the prosecutor admitted that Petitioner was not guilty of any criminal offense during a side bar conference. This allegation is without record support and does not provide a basis for relief.

Petitioner asserts that the prosecutor failed to provide exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "Evidence is material under *Brady* if there is a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Tavera*, 719 F.3d 705, 713 (6th Cir. 2013)(citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S.

263, 281 (1999). The duty to disclose under *Brady* encompasses both exculpatory and impeachment evidence. *Strickler,* 527 U.S. at 280. However, "[i]n the absence of prejudice, even assuming a violation of *Brady,* reversal is not required." *United States v. Jones*, 766 F.2d 994, 998 n. 1 (6th Cir.), *cert. denied*, 474 U.S. 1006 (1985).

> [T]he "mere possibility" that the evidence might have aided the defense or might have affected the outcome of the trial does not satisfy the materiality element. *United States v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Also, a belated disclosure of evidence violates *Brady* only where a petitioner can show that the delay itself caused prejudice. *O'Hara v. Brigano*, 499 F.3d 492, 502 (6th Cir. 2007).

*Overbay v. Carlton*, No. 2:07-cv-155, 2008 WL 4682802 (E.D. Tenn. Oct. 21, 2008).

Petitioner refers to the government's April 12, 2013 belated disclosure (made during the time that Petitioner's appeal remained pending) of two emails from 2007 relating to the prosecutor's efforts to seek advice from the Professional Responsibility Officer of the District and the Professional Responsibility Advisory Officer in Washington D.C. regarding a false affidavit that had been filed by prosecution witness George Pappas[1] in Petitioner's divorce case,

---

[1] Pappas testified that he had met Petitioner in law school, and they became friends. *Transcript Vol. VIII* (ECF No. 332, PageID# 17589.) "He was like a brother." (PageID# 17608.) In 2004, Petitioner placed his law practice on 728 North High Street in Pappas' name to keep it from Petitioner's wife during their divorce. (PageID# 17598-99.)

> [I]n the divorce, Chrissoula Matsa's attorneys pointed out that the law firm was in Rick's name, even though he had been saying it was my firm and my clients, had done so in letters, and we had done so in court pleadings and stuff. And I believe one of those court pleadings was an affidavit that I had signed as well.
>
> They. . . filed a complaint with the Supreme Court of Ohio. The disciplinary council contacted us, and we made the changes to the paperwork that were necessary to reflect it as having been mine since 1986[.]
>
> Q. Was that true?

in which Pappas indicated that he owned Petitioner's law firm,[2] and discovery of transcripts from

Special Agent Gosiewski's August 15, and September 19, 2006 grand jury testimony.  (*See* ECF

No. 405, PageID# 88656, filed under seal.)  Petitioner now claims Gosiewski's August 15, 2006

grand jury testimony conflicts with his trial testimony and shows that Gosiewski "knew of Mr.

Matsa's personal assets, and that not only were those assets properly disclosed as to income from

them, but that these disclosed assets would generate losses which Mr. Matsa was entitled to fund

with his money."  (ECF No. 424, PageID# 88768.)  Petitioner further claims that Gosiewski's

September 19, 2006 grand jury testimony shows that the prosecutor improperly met with his ex-

wife.  He argues that, had these excerpts of Gosiewski's grand jury transcripts previously been

disclosed, he would have called Christine Biel as a defense witness.  (*Id*.)

---

A. No, it was not.

(PageID# 17600.)  Pappas lied to the Supreme Court of Ohio and to the divorce lawyers representing Petitioner's wife.  Petitioner told people that the law firm had mistakenly been in Petitioner's name due to a mistake made by untrained secretarial help.  (PageID# 17603.)  In the summer of 2006, Petitioner had Pappas sign tax returns for the law office for the years 2004, 2005, and 2006.  (PageID# 17602-05.)  Pappas, however, knew nothing about the financials of the law firm.  Pappas did not have a key to the office until August or September of 2006. (PageID# 17605.)  Petitioner controlled the bank accounts affiliated with the office.  (*Id*.) Pappas had no access to the bank accounts, returns or statements.  (PageID# 17606.)  In August 2006, Pappas received a subpoena to appear before the grand jury in September 2006 from Agent Gosiewski.  (PageID# 17609.)  Pappas recorded his conversation with Gosiewski and gave the tape to Petitioner a few days later.  (PageID# 17611.)  Pappas lied before the grand jury. (PageID# 17746, 17752.)  Pappas also misrepresented facts to his attorney.  (PageID# 17771.) Pappas testified pursuant to the terms of his December 2006, plea agreement.  (PageID# 17798, 17802-03.)

[2] Gosiewski testified before the grand jury on August 15, 2006, that Pappas signed an affidavit in civil divorce proceedings indicating that he was the sole shareholder of the Law Offices of Aristotle Matsa and that he always had been.  In April 2004, documents were filed with the Ohio Secretary of State indicating that the name should be changed to Law Offices of George Z. Pappas and that George Pappas is 100 percent shareholder and that previous reports filed were in error.  (See ECF No. 405, PageID# 88668, filed under seal.)

The record reflects that defense counsel thoroughly cross-examined Pappas regarding Pappas' prior inconsistent sworn statements during a deposition in March 2006 and to the grand jury, wherein Pappas stated that he had owned the law practice since 1985 and that Petitioner's mother owned the building, as well as the adjacent properties, since prior to Petitioner's marriage. *Trial Transcript, Vol. X* (ECF No. 336, PageID# 17811-12.) She had given Petitioner the money to purchase his home in Worthington, and she served as the sole shareholder of Zacharoula LTD, the company that owned the property in Worthington. (PageID# 17812.) Pappas testified before the grand jury while under oath that Chrissoula Matsa, Petitioner's ex-wife, had kidnapped Petitioner's daughter, removed files from the law office, and hired an investigator to blackmail Petitioner. (PageID# 17813-14.) Pappas told the grand jury he owned the firm, and he represented some of the trusts. (PageID# 17828-29.) Pappas changed his testimony after the prosecutor threatened him with contempt and the filing of criminal charges. (PageID# 17829.) In August 2006, Pappas told IRS investigators that he had owned the law office for 21 years, and that Petitioner's mother owned Petitioner's home and the apartments on Neil Avenue. (PageID# 17835-36.) He previously informed the government that Petitioner's ex-wife was using them to gain an advantage her divorce. (PageID# 17838.)

However, nothing contained in the fairly brief email exchange referred to, in which the prosecutor was inquiring about his ethical obligation to disclose Pappas' admission that he had lied in Petitioner's divorce proceedings, indicates that the prosecutor violated *Brady*. The emails do not contain or constitute material exculpatory evidence. Likewise, Petitioner does not indicate, and this Court is unable to discern from the record, the precise manner in which Gosiewski's 2006 grand jury would have assisted him. The record reflects that Gosiewski acknowledged on cross-examination that he had met with Petitioner's ex-wife, Chrissoula Matsa,

on approximately thirty occasions, and had only initiated the investigation against Petitioner after she called him with information about Petitioner. *Transcript, Vol. XIV* (ECF No. 346, PageID# 18664-5.)[3] Thus, Petitioner had knowledge of this information. Moreover, it appears that all of the information contained in Gosiewski's transcripts to the grand jury would have been cumulative to other timely disclosed discovery material. Petitioner does not identify the nature of other allegedly undisclosed evidence or the manner in which he was prejudiced by the government's purported non-disclosure.[4] It is not the responsibility of this Court to scour the record in search of support for Petitioner's claims. *See Wright v. Moore,* No. 2:13-cv-0881, 2014 WL 2876431, at *3 (S.D. Ohio June 24, 2014). *See also Johnson–Bey v. Brentwall LLC*, No. 4:06–cv–67, 2007 WL 2021861, at *2 (W.D. Mich. July 6, 2007) (citing *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004)). Petitioner has failed to establish a *Brady* violation.

Review of Petitioner's lengthy filings demonstrates that his contention that he was denied a fair trial based on prosecutorial misconduct, and indeed the crux of his § 2255 motion, revolves around his protestation of innocence and his contention that the evidence is constitutionally insufficient to sustain his convictions. Petitioner goes on at length to argue that the prosecutor engaged in improper conduct throughout the trial by conducting the prosecution against him. (See ECF No. 424, PageID# 88838-89014.) This appears to be based, in part, on his allegation

---

[3] Gosiewski initiated the investigation in January 2006 because Petitioner's ex-wife called him with information about Petitioner, and it was Gosiewski's first investigation as an agent. *Transcript, Vol. VIV* (ECF No. 346, 18663.) Gosiewski did not speak to any other potential witness as frequently as he did with Petitioner's wife. She asked him to dinner and to lunch and told him to bring a friend, but he refused. (PageID# 18665.) She provided him with documents, and gave him Petitioner's 2002 calendar, although the divorce was not filed until July 2003. (PageID# 18666-67.) She made many allegations against Petitioner and asked Gosiewski whether or not Petitioner was in the CIA. (*Id.*)

[4] In a telephone status conference, after the April 12, 2013 disclosure of emails, the prosecutor indicated that he had knowledge of no other evidence that had not previously been disclosed. *Transcript of Telephonic Status Conference Proceedings* (ECF No. 409, PageID# 88701.)

that the prosecutor presented false evidence. He argues at length that the prosecutor maliciously and improperly pursued charges against him despite knowing "all along that there was no crime" and withheld evidence of Petitioner's innocence from the Court. (ECF No. 424, PageID# 88762-63.) Therefore, according to Petitioner, the prosecutor acted improperly in submitting evidence of Petitioner's guilt. Petitioner further maintains that he lacked criminal intent and reasonably relied on the advice and representations of his accountant and lawyer. (ECF No. 424, PageID# 88786-87.) He also argues that he lacked the requisite *mens rea*. *See Reply* (ECF No. 434, PageID# 89101, 89105-89111.) He posits that the charges against him have arisen because he was involved in a domestic dispute and divorce. (PageID# 89126.) He also asserts that prosecution witnesses lied because the prosecutor threatened them. (PageID# 89128.) Petitioner states, "[i]n a nutshell, Mr. Matsa never intended to do anything wrong, he did not have the necessary state of mind to do anything wrong, and in fact nothing wrong ever occurred." *Reply* (ECF No. 434, PageID# 89248.)

However, claims of insufficiency of the evidence are not properly considered in § 2255 proceedings. *See Scott v. Morrison*, 58 F. App'x 602, 603 (6th Cir. 2002); *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969); *Stephan v. United States*, 496 F.2d 527, 528–29 (6th Cir. 1974), *cert. denied*, 396 U.S. 1015 (1970). Moreover, free-standing claims of actual innocence, without attendant claims of constitutional error, do not generally provide a basis for federal habeas corpus relief, and this Court therefore will not address these issues here. *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007). To the extent that Petitioner's claim of innocence falls into the category of claims that this Court must entertain in light of *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1931 (2013), Petitioner's claim fails because his attack is upon the sufficiency of the evidence, *absent all of the evidence to which he objects on other*

*bases.*  Actual innocence, for § 2255 purposes, is *factual* innocence, not insufficiency.  *Bousley*, 523 U.S. at 623.  Petitioner's claim of innocence is that "[w]ithout the prosecutor's misconduct and the fraud perpetrated upon the jury and the Court there is no strength of any evidence against" him.  (ECF No. 424, Page ID# 88747-8).

Additionally, Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that the 2255 motion must specify the grounds for relief, with the facts in support of each ground.  "Rule compliance is mandatory for § 2255 movants."  *United States v. Greene*, Nos. 6:15-cr-GFVT-REW, 6:16-cv-150-GFVT-REW, 2016 WL 6023839, at *3 (E.D. Ky. Aug. 30, 2016).  Petitioner has failed to comply with Rule 2.  He sets forth a general and conclusive claim of prosecutorial misconduct and refers to virtually the entire trial transcript in support of this claim.  He then requests that the Court carefully review all of the thousands of pages of his Appendix Exhibits containing, *inter alia*, photocopies of documents and transcripts of recordings and other apparent discovery material, purportedly in order to discover the factual basis or support for this allegation.  He states, for example, that his "arguments, facts, and case law are incorporated in appendix Exhibits 1, 2, 3 and 4 all of which are incorporated herein as if fully rewritten herein verbatim."  (ECF No. 424, PageID# 88808.)  He indicates that "the [thousands of pages of] Appendix/Exhibits are so integral to the Motion that they are and thus must be considered as part of the Motion itself."  (*Id.*) (*See, e.g.*, ECF No. 424, PageID# 88746, 88836, 88846.)

> It is impossible to present all of the violations, constitutional issues, withholding of information, and the like in one fell swoop.  We begin with a scratching of the surface and with the promise of more particulars to be added incrementally.  The [Court] is asked to remember that issues are separate and distinct while others are cumulative or interrelated."

(ECF No. 424, PageID# 88761.)  He indicates that he is raising "literally hundreds, if not thousands" of instances of prosecutorial misconduct.  (PageID# 88762.)

> To properly evaluate and expose these wrongs. . . multiple things must be considered and thus there are two integral parts to this writ with multiple sub parts that all fit together; but, which must all be read and considered not only individually but as part of the whole. It is only then that one can come to a fair decision; as when one looks at only a small part of a painting or only a few pieces of a jigsaw puzzle, one cannot see or understand the entire picture. Therein lies the challenge[.]

ECF No. 424, PageID# 88809-10.)

As discussed, it is not the duty of this Court to connect thousands of pieces of a jigsaw puzzle in an attempt to discover the supportive facts or basis for a petitioner's claims.  *See Robinson v. United States,* 582 F. Supp. 2d 919, 925-26 (N.D. Ohio 2008) (citations omitted). *See also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *Kidd v. United States*, Nos. 1:12-cv-358, 1:10-cr-114, 2013 WL 6795977, at *1 (E.D. Tenn. Dec. 20, 2013)(claims that are "confusingly pled and difficult to decipher" fail to comply with Rule 2); *Vieira v. Chappell*, No. 1:05-cv-01492-AWI-SAB, 2015 WL 641433, at *139 (E.D. Cal. Feb. 5, 2015)("[t]he Court will not 'sift through voluminous documents . . . in order to divine the grounds or facts which allegedly warrant relief'")(citing *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990)).  "An unduly lengthy submission violates Habeas Rule 2(d)." *Sellers v. United States*, No. 14-0388 (RMB), 2014 WL 340598, at *2 (D. New Jersey Jan. 30, 2014)(internal quotation and citation omitted).  Indeed, the Rules governing habeas corpus proceedings do not permit habeas litigants "to submit voluminous filings asserting multitudes of claims conflated into numerous Hydra-like umbrella challenges."  *Id.* (citation omitted).

In summary, Petitioner's failure to comply with the applicable rules constitutes a separate, sufficient basis for denying the relief he requests.

## Recommended Disposition

Therefore, for all of the foregoing reasons, it is **RECOMMENDED** that the *Motion to Vacate under 28 U.S.C. § 2255* (ECF No. 424) be **DISMISSED.** In addition, Petitioner's *Motion to Cause the electronic Inclusion of All Documents Previously Filed In This Matter* (ECF No. 428) and *Motion to Strike Response to Motion* (ECF No. 431) are **DENIED**, and Respondent's motion to hold answer in abeyance (see ECF No. 429) is **DENIED** as moot.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE